DURAND ET AL. V. BOWEN.

1. **Guaranty of Collection**: WANT OF DILIGENCE: GUARANTOR DIS-CHARGED. The contract herein declared on (see statement of case) is a guarantee of collection, and, inasmuch as plaintiffs failed to bring suit against the principal debtors at the first term of court after the debt was due, when it appears they were solvent and the debt could have been made of them, *held* that the guarantor was discharged.

*Appeal from Carroll District Court*—HON. J. P. CONNER, Judge.

MONDAY, DECEMBER 19.

PLAINTIFFS brought this action to recover an indebtedness of $200 arising out of the sale by them to John C. Davis and his wife of certain goods and merchandise. Their claim against this defendant is upon the following writing:

"CARROLL, October 22, 1885.

"*H. C. & C. Durand:* For value received, I hereby guaranty collection of all the present indebtedness of John C. Davis, or Mrs. O. W. Davis, to whom he has sold or transferred his stock at Maple River Junction, Iowa, and authorize you to sell her goods on credit the same as you have heretofore to John C. Davis; my liability herein, however, not to exceed $200, and may be canceled by giving thirty days notice to you in writing in Chicago. This guaranty supersedes the one given you July 20, 1885.

"GEORGE. W. BOWEN."

The defense pleaded is that the writing is a guaranty of collection, and that plaintiffs had not used due diligence to collect the debt from the principal. The cause was tried to the court without the intervention of a jury, and the judgment was for defendant. Plaintiffs appeal.

*George R. Cloud*, for appellants.

*George W. Bowen*, appellee, *pro se.*

REED, J.—For some time before the date of the instrument set out above, John C. Davis had been engaged in business as a merchant at Maple River Junction. On the 20th of July, 1885, defendant wrote to plaintiffs, who are wholesale dealers in Chicago, requesting them to sell to Davis such goods as he should need in his business on credit, and guarantying the payment by Davis of any indebtedness he might contract with them, not exceeding $200. On the 1st of October following, Davis was indebted to plaintiffs in a considerable amount for goods obtained after the execution of the guaranty, and was unable to pay his debts at their maturity. Being desirous of engaging in other business, he proposed to transfer the stock of goods on hand to O. W. Davis, his wife, she to assume his indebtedness to plaintiffs, and continue the business. Defendant wrote to plaintiffs informing them of this proposed arrangement, and urging them to consent to it. They wrote him that they would consent to this arrangement provided Mrs. Davis would enter into a written undertaking to pay the amount of her husband's indebtedness to them, and he (defendant) would give them a written contract binding himself to the same extent under the new arrangement that he was under the old. Mrs. Davis accordingly executed a written contract, assuming and binding herself to pay the amount of her husband's indebtedness to plaintiffs, and defendant executed the instrument set out above. Mrs. Davis is now indebted to plaintiffs to the amount of $210, of which amount $163.75 is for goods sold her after the arrangement was entered into. The whole amount was past due on the 25th of August, 1886. From the time she took possession of the store up to about the 1st of October, 1886, she carried a stock of goods of the value of from $340 to $500. But she had no other property, and her husband was insolvent. About October 1st her store was consumed by fire, and the stock of goods therein totally destroyed. Plaintiffs took no steps at any time against the Davises to enforce collection of the debt. It does not appear that they had any

grounds for suing out an attachment, but a term of the circuit court was held in Carroll county, (that being the county in which the Davises lived,) commencing on the 20th of September.

The contract sued on is a guaranty of the collection of the debt. Defendant's undertaking was that he would pay the debt if the principal failed to pay it at maturity, and plaintiffs were not able by due diligence to enforce collection from the principal. In the absence of special facts, due diligence would require that suit should be brought against the principal at the first regular term of court after the maturity of the debt, and that judgment be taken, and execution issued thereon, as soon as practicable, by the ordinary rules and practice of the court. (*Voorhies v. Atlee*, 29 Iowa, 49.) If the principal debtor had been insolvent when the debt matured, that, perhaps, would have excused the failure to institute suit and obtain judgment against her. But she was not insolvent. On the 25th of August, and from that time up to the time of the fire, she had property in her possession sufficient to pay the debt. If suit had been brought in the September term of court, judgment might have been taken on the second day of the term. If that had been done, execution could have been issued at once, and the property might have been seized before the fire. The failure to institute suit at that time was clearly prejudicial to defendant.

The judgment of the district court is right and it will be

AFFIRMED.