**PREFERRED INVESTMENT COMPANY,**
Appellee,

v.

**C. T. WESTBROOK and Joseph W. Grant, Jr., Individually and d/b/a Cedar Rapids Citizen-Times, Appellants.**

No. 53666.

Supreme Court of Iowa.

Feb. 10, 1970.

Robert C. Nelson and Robert M. Fassler, Cedar Rapids, for appellants.

Michael Figenshaw, Des Moines, for appellee.

MASON, Justice.

Plaintiff, Preferred Investment Company, an Iowa corporation engaged in the finance business, brought this law action against T. C. Westbrook, Joseph W. Grant, Jr., individually and doing business as Cedar Rapids Citizen-Times, to recover upon a conditional sales contract, promissory note and written guarantee of the contract and note. The contract and note were in the amount of the agreed purchase price of certain printing equipment purchased by Citizens Publications, Inc.

I. Arthur D. Beers, president of A. D. Beers Company, Inc., a distributor of printing equipment, had sold certain equipment on installment contract to George Forby. In May 1964 Forby was in default under his contract. In June Beers met in Cedar Rapids with Forby, defendants Grant and Westbrook and other officers and directors of Citizens Publications, Inc., publishers of the Cedar Rapids Citizen-Times, to discuss the possibility of Beers' repossessing the equipment from Forby and its resale to Citizens Publications, Inc. Either at this meeting or at a meeting one week later it was agreed the newspaper would buy the equipment for the balance due on Forby's contract with payments beginning after the equipment became operational and was in use. Repossession and delivery to the newspaper premises followed on June 24.

By August 14 the equipment was in use. That day Beers and Vern Houghton, plaintiff's president, met in Cedar Rapids with Westbrook and Grant at the newspaper office. Beers presented a conditional sales contract, separate promissory note and the written guarantees endorsed thereon for the signatures of Westbrook and Grant. After some discussion the four went to the office of a Linn County notary public where the instruments were signed by Grant and Westbrook in the notary's presence. Beers did not sign the contract but assigned it, the note and the property described to plaintiff.

The same night the building housing the newspaper, including the equipment covered by the conditional sales contract, was destroyed by fire. Nothing was ever paid

on the contract, note or guarantees and this suit followed.

II. Plaintiff as assignee seeks recovery on the contract and note in Division I of its petition against defendants in their individual capacities doing business as Cedar Rapids Citizen-Times. Division II was a separate cause of action predicated on Westbrook's guarantee of the note given as a part of the transaction and seeks judgment against him personally. Division III asks judgment against Westbrook on the theory he guaranteed payments by defendants (not the corporation) of the amount specified in the conditional sales contract.

In answer after denying certain allegations of plaintiff's petition Westbrook and Grant alleged the contract was made with Citizens Publications, Inc., a corporation, not with them as individuals doing business as Cedar Rapids Citizen-Times; they denied they had signed the instruments in their individual capacities and alleged affirmatively that said documents had been executed by them while carrying out their duties as officers of the corporation; Westbrook further alleged by way of affirmative defense the guarantees had been endorsed on the instruments after the original signing and therefore lacked consideration.

At trial the dispute was whether the contract and note were intended to be obligations of the corporation and whether the guarantees by Westbrook were executed after the contract and note had been signed and notarized.

Instead of submitting the case to the jury for a general verdict, the trial court submitted only certain alternative findings on the question whether there was a corporate or individual obligation and whether the guarantee by Westbrook was executed after or at the same time as the contract and note.

In response to the interrogatories the jury first found Grant and Westbrook had signed the documents as corporate officers and not in their individual capacities. They next determined the words "personal guarantee" of Westbrook were affixed at or about the same time as other signatures of defendants and before the conditional sales contract was notarized.

The court then made findings of fact and conclusions of law in the belief that there were no other factual disputes material to a decision, refused to grant plaintiff judgment against defendants individually on the contract or note but entered judgment against Westbrook as prayed in Division II of plaintiff's petition on his guarantee of the note.

The court concluded the cause asserted in Division I of plaintiff's petition should have been against Citizens Publications, Inc. Plaintiff's petition clearly indicated the claim asserted in this division was against defendants in their individual capacities, doing business as Cedar Rapids Citizen-Times. Defendants by denying they had executed the documents in their individual capacities generated a fact issue. The jury found Grant and Westbrook had executed the contract and note on behalf of the corporation. Recovery was denied on this division.

The court further reasoned plaintiff's cause asserted in Division III was predicated on the theory Westbrook was guaranteeing the credit of Grant and Westbrook in their individual capacities on the conditional sales contract. Defendants' answer in denial created a fact issue as to this division. In view of the jury's special finding plaintiff had not established its theory, no recovery could be had against Westbrook under this division.

Grant was not a defendant in either Divisions II or III.

III. Although notice of appeal refers to defendants appealing, no judgment was entered against Grant. He has nothing to appeal from. Therefore, we are concerned here only with Westbrook's appeal.

He contends the trial court erred (1) in failing to sustain defendants' motion for directed verdict made at the conclusion of plaintiff's evidence since there was no showing of a valid subsisting agreement between plaintiff's assignor and the purported contract purchasers, (2) in entering judgment against Westbrook as a guarantor when the record disclosed Westbrook's liability, if any, was only secondary, (3) in not properly instructing the jury as to the law applicable to the facts and (4) in failing to submit defendants' request for interrogatories.

■ Westbrook argues in support of his first assigned error that negotiations with reference to purchase of the equipment were all conducted in June and it was the parties' manifest intention that before the agreement would be culminated there would be a written agreement signed by all parties in interest. There is no dispute Beers did not sign the conditional sales contract as "seller".

Basis of defendants' motion to direct made at the close of plaintiff's evidence was this failure of Beers to sign the conditional sales contract. It should be pointed out that defendants renewed this motion at the close of all evidence.

The trial court rendered judgment against Westbrook in the amount of $9062.-59 plus attorney fees, interest and costs based on the cause asserted in Division II of plaintiff's petition—Westbrook's guarantee of the promissory note. No judgment was rendered against Westbrook predicated on the conditional sales contract alleged for recovery in Division I.

It is true the trial court did not base its refusal to award judgment on the theory urged by Westbrook in this assignment, but on the jury's special finding the sales contract was executed by him and Grant as officers of the corporation and not in their individual capacities. The validity of any contract between plaintiff's assignor and the corporation was never put in issue under plaintiff's pleadings.

There is testimony by Grant that in the June meetings it was contemplated that after the equipment was operational Beers would bring a written agreement to Cedar Rapids providing for the purchaser to take over Forby's payments. However, there is absolutely no evidence it was the manifest, definite and positive intention of the parties that even after the contract was signed by its officers the purchaser was not to be bound until the agreement was signed by plaintiff's assignor.

Westbrook's contention that because plaintiff's assignor failed to sign the conditional sales contract the court erred in not directing a verdict is without merit when directed against the action pleaded in Division I.

The same is true when this assignment is urged in challenging the court's failure to direct a verdict in Westbrook's favor on Division III. As previously pointed out plaintiff alleged in this division Westbrook had guaranteed payments by defendants in their individual capacities of the amount promised to be paid under the terms of the conditional sales contract. It did not plead as a theory for recovery under this division that Westbrook had guaranteed contract payments by the corporation. As a result of the jury's special finding on the first interrogatory that Grant and Westbrook signed the sales contract only as corporate officers, the court denied recovery.

■ Nor can Westbrook's first assignment of error have any merit as a challenge to the judgment rendered on Division II. There plaintiff pleaded a separate cause on the theory Westbrook was guaranteeing payment of the note as an individual and was therefore primarily liable for the promise to pay contained in the note. A negotiable note must be signed by the maker or drawer. See section 541.1, Code, 1962, in effect prior to July 4, 1966. Of course, there is no requirement that to constitute a binding promise to pay on the part of the maker the note must be signed by the payee or holder.

IV. Westbrook contends under his second assignment inasmuch as the liability of a guarantor is secondary and not primary, there must have been a determination that a valid subsisting contract between plaintiff's assignor and the corporate entity existed. Further, it must appear the principal debtor defaulted on the contract. Absent such proof he as guarantor cannot be liable.

The promissory note contained the words "Personal Guarantee by C. T. Westbrook" and was signed Carroll T. Westbrook. The court concluded that although the word "guarantee" was used, Westbrook was in fact a surety and therefore primarily liable; the words on the note constituted an unconditional guarantee of payment rather than a guarantee of collection.

Without question the note involved contained all the requirements of an ordinary negotiable instrument.

We consider first Westbrook's argument it must appear the principal debtor defaulted on the contract.

The merit of this contention depends on whether the guarantee as set out above is a guarantee of payment or a guarantee of collection.

■ If defendant's guarantee is one of payment, the obligation is an absolute undertaking with the imposition of liability on the guarantor immediately upon default of the principal debtor, and regardless of whether any legal proceedings or steps are taken to enforce liability of the principal debtor, or whether notice of default is given to the guarantor, and regardless of the solvency or insolvency of the principal debtor. Schaffer v. Acklin, 205 Iowa 567, 570, 218 N.W. 286, 287, and citations; Miller v. Geerlings, 256 Iowa 569, 580, 128 N.W.2d 207, 214.

■ If a guarantee of collection, there is no liability until after, by use of due diligence, the guarantee has become unable to collect the debt from the principal debtor.

Schaffer v. Acklin, supra, 205 Iowa at 571, 218 N.W. at 287.

See also in this regard Amick v. Baugh, 66 Wash.2d 298, 303–308, 402 P.2d 342, 345–348; 38 C.J.S. Guaranty § 46.

In Amick defendant signed two negotiable promissory notes, one for $5000 and the other for $10,000. His signature was followed by the sole words "guarantor" and "as guarantor only" on the face of each of the two notes, respectively. In determining defendant was a guarantor of payment the court said:

"In Sherman, Clay & Co. v. Turner, 164 Wash. 257, 263, 2 P.2d 688 (1931), involving an ordinary contract, we held that the words 'payment guaranteed' clearly showed that the intention of the party using those words was to be bound as an absolute guarantor. In that case, this court stated:

"'* * *

"'"'* * * A guaranty is deemed to be absolute unless its terms import some condition precedent to the liability of the guarantor.'" * * *'

"* * * These words show no other condition than the default of the maker of the note. This is the standard legal effect of these words in commercial law. See Stearns, Suretyship, section 4.5 (5th ed. 1951)" (Emphasis supplied). 402 P.2d at 345.

■ Since the words "Personal Guarantee" contain no conditions precedent to liability except default of the debtor, like the trial court, we hold these words constitute an unconditional guarantee of payment. Plaintiff's petition contains sufficient allegations that the principal debtor had defaulted and similar uncontroverted testimony was introduced into evidence. Nothing further was required.

See as supporting to some extent our position here Foundation Press v. Bechler, 211 Iowa 1217, 233 N.W. 666.

We next consider Westbrook's contention there must have been a determination

that a valid subsisting contract between plaintiff's assignor and the corporate entity existed. Here the corporation's promise to pay the purchase price of the equipment is contained in both the conditional sales contract and the promissory note. The remedy of repossession provided by the contract was not exclusive; it did not preclude suit upon the absolute and unqualified promise to pay contained in both the note and the contract. The holder may proceed on the note or may at his option proceed against the security. In Division II plaintiff elected to proceed on the note and impose liability on Westbrook as guarantor. The trial court determined that plaintiff had properly pleaded this theory for recovery in Division II and in view of the jury's special finding there was evidence warranting the judgment rendered.

Beers' delivery of the printing equipment later made operational was sufficient consideration for the corporation's execution of the note. A valid subsisting contract between Beers and Citizens Publications, Inc. resulted.

Westbrook's contention as a basis for reversal cannot be sustained.

V. In his remaining assignments Westbrook contends the court erred in failing to instruct on and submit for the jury's consideration the factual question of whether the conditional sales contract was or was not signed by all the parties. We treat them together.

The text of defendants' proposed instruction reads, "You are instructed that where it is intended that the terms of a proposed contract shall be reduced to writing and signed before it shall be considered as complete and binding on the parties there is no final contract until the same is signed by all parties."

We have already pointed out there was no evidence to support the giving of the requested instruction.

Turning to the interrogatories, refusal to submit them finds support on two

bases. First, it was uncontroverted that Beers, plaintiff's assignor, did not sign the conditional sales contract. Thus, there was no issue to be determined. Secondly, whether his signature appears on the contract or not would not have affected the result. Even without his signature, a binding and effective contract existed in the form of the promissory note.

Interrogatories should be concerned with issues in the case and be such that answers to them will be decisive on some claim involved therein. Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 1196, 91 N.W.2d 380, 386, and citations; Barnard v. Cedar Rapids City Cab Co., 257 Iowa 734, 748, 133 N.W.2d 884, 894; Livingston v. Morarend, 260 Iowa 530, 539–540, 149 N.W.2d 850, 855.

Defendants' requested interrogatories were not of the kind the court was compelled to submit.

Finding no error, the matter is affirmed.

All Justices concur, except REES, J., who takes no part.